**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

| | |
|---|---|
| **AGATHA R. ASEMOTA and** | ) |
| **BLESSING E. ASEMOTA,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )      **No. 11-2816-STA-dkv** |
| | ) |
| **SUNTRUST MORTGAGE, INC. and** | ) |
| **BANK OF AMERICA, N.A.,** | ) |
| | ) |
| **Defendants.** | ) |

_____

**ORDER GRANTING DEFENDANT BANK OF AMERICA'S MOTION TO DISMISS**
_____

Before the Court is Defendant Bank of America, N.A.'s ("Defendant") Motion to Dismiss (D.E. # 9), filed on November 11, 2011. Plaintiff filed a Response (D.E. # 14) on December 13, 2011. Defendant filed a Reply (D.E. # 15) on December 27, 2011. For the following reasons, Defendant's Motion is **GRANTED**.

## BACKGROUND

Plaintiffs originally filed their Complaint in Shelby County Chancery Court on September 6, 2011. (D.E. # 1-1.) Defendant SunTrust Mortgage, Inc. ("SunTrust") removed the case to this Court on September 20, 2011 (D.E. # 1), and Defendant filed the Motion to Dismiss now before the Court on November 14, 2011. (D.E # 9.) SunTrust filed an Answer and is not a party to Defendant's Motion. (D.E. # 12.) Therefore, the Court will attempt to confine its recitation of the facts to those applying only to Defendant.

Additionally, Plaintiffs' Complaint requested the Shelby County Chancery Court to issue a Temporary Restraining Order ("TRO") enjoining SunTrust and Defendant (collectively "Defendants") from foreclosing on both pieces of their real property, ordering them to cease all efforts to foreclose on all of Plaintiffs' real estate, and enjoining them from maintaining or exerting future efforts to provide derogatory credit reporting information about foreclosing on their real estate to national credit reporting agencies. (Compl. at 18.) The Chancery Court granted Plaintiffs' Motion for the TRO, and the TRO tracked the language of the Complaint. It restrained Defendants from collecting on Plaintiffs' unpaid debt, from all foreclosure proceedings against Plaintiffs' real property, and from all efforts to provide derogatory credit reporting information about foreclosing on Plaintiffs' real estate to national credit reporting agencies. (Fiat, D.E. # 1-1, at 21.) The TRO took effect on September 6, 2011. (*Id.*)

According to Plaintiffs, Defendants "completed a sale of the real property in question which would clearly entitle Plaintiffs to relief in this matter." (Pls.' Resp., D.E. # 14, at 2.) Plaintiffs also stated that they would need to more fully explore discovery before they can move the Court to amend the Complaint or file a motion for contempt. (*Id.*) In its Reply, Defendant notes that it "received only a few days notice" and failed to stop the foreclosure sale. (Def.'s Reply, D.E. # 15, at 3.) However, "Defendant immediately rescinded the sale, [thereby] restoring the status quo ante [and] voluntarily and immediately purg[ing] any contempt of the Chancery Court's order." (*Id.*) Accordingly, Defendant argues that any harm suffered by Plaintiffs due to the foreclosure has been remedied and that a civil contempt hearing is unnecessary. (*Id.*)

It appears from the parties' briefing that Defendant has purged any contempt it would have been in for its foreclosure of Plaintiffs' residence in violation of the TRO. Moreover, Plaintiffs have not filed a Motion requesting the Court to address Defendant's violation, and their bare assertions that they need more discovery before doing so do not rise to the level of a Motion under the Federal Rules of Civil Procedure. Therefore, any request for contempt-related relief is not properly before the Court at this time. Additionally, Plaintiffs did not dispute that Defendant purged its contemptuous foreclosure and violation of the TRO. Accordingly, Plaintiffs' assertions regarding Defendant's TRO violation are insufficient for the Court to grant them TRO-related relief.

The following facts are taken as true for purposes of this Motion. Plaintiffs bring suit for breach of contract, breach of the implied covenant of good faith and fair dealing, "fraud and/or misrepresentation," violation of the Tennessee Consumer Protection Act ("TCPA"), and "other intentional, reckless, and/or negligent actions and/or omissions." (Compl., D.E. # 1-1, at 8-18.) On November 1, 2006, Plaintiffs executed a Deed of Trust ("the Deed of Trust") and a Promissory Note ("the Note") in favor of Countrywide Home Loans, Inc., doing business as America's Wholesale Lender.[1] (See Compl. ¶ 6.) Sometime in 2007, Plaintiffs entered into a

---

[1]    Defendant submitted several documents with its Motion to Dismiss, including the Deed of Trust and the LMA. (D.E. # 9-2, 9-3.) Although the Court's reliance on these documents outside the pleadings would ordinarily turn Defendant's Motion into a Motion for Summary Judgment, the Sixth Circuit has noted that courts "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to [the] defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Zibbell v. Mich. Dep't of Human Servs.*, 313 F. App'x 843, 846 (6th Cir. 2009).

Additionally, in their Response, Plaintiffs do not protest Defendant's reliance on these documents. The Complaint mentions them, and it repeatedly states that Defendant breached its obligations under them. Accordingly, the Court finds that its reliance on the LMA, Deed of

second mortgage with SunTrust.  (*Id.* ¶ 7.)  Since that time, numerous problems "with

miscalculations of amounts, . . . the loan modification program, inappropriate charges, and other

substantial and continuing issues" have arisen.  (*Id.* ¶ 8.)  In 2009, Plaintiffs signed a loan

modification agreement ("LMA") with Defendant in which Defendant added backpay, attorney's

fees, and other fees to Plaintiffs' principal, bringing it to over $60,000.00.  (*Id.* ¶ 9.)

When Defendant first contacted Plaintiffs about increasing their monthly payments to

$800.00, Plaintiff Agatha Asemota called Defendant.  (*Id.* ¶ 10.)  Defendant told her to "ignore

being told to pay $800.00 per month but to continue paying $607.00 per month, which she did."

(*Id.*)  Defendant accepted payments until February of 2011 and refunded a check for Plaintiffs'

August 2010 payment.  (*Id.* ¶ 11.)  SunTrust sent Plaintiffs three Mortgage Interest Statement tax

forms for the 2010 tax year; two of them listed the amount of $4,222.33, and the other listed the

amount of $19,567.00.  (*Id.* ¶ 13.)  Although the Complaint indicates that Defendant's stream of

2010 Mortgage Interest Statement tax forms were attached to the Complaint as Exhibit A, the

Notice of Removal does not contain Exhibit A.

On May 4, 2011, Plaintiffs issued demand letters to Defendant and SunTrust requesting

them to cease all collection and foreclosure activity.  (*Id.* ¶ 14.)  Although the Complaint

indicates that the demand letters were attached to the Complaint as Exhibits B and C, the Notice

of Removal does not contain these Exhibits.  On July 19, 2011, Reconstruct Company, N.A.,

which Plaintiffs allege is "an apparent agent of the Defendant" without specifying which

Defendant, mailed Plaintiffs three copies of a Notice of Substitute Trustee's Sale.  (*Id.* ¶ 22.)

---

Trust, and Note is merited, as they are central to the claims in the Complaint and have been
incorporated by reference.  Therefore, Defendant's Motion remains a Motion to Dismiss despite
its reliance on the LMA, Note, and Deed of Trust.

Contrary to the Complaint, the Notice of Substitute Trustee's Sale was not attached as Exhibit K. Plaintiffs submit that the Notice of Substitute Trustee's Sale was on behalf of The Bank of New York Mellon, "which is somehow tied to the Bank of America loan secured by . . . Plaintiffs' Knight Arnold Road property." (*Id.*)

Plaintiffs conclude the factual portion of their Complaint by averring "that there is a serious and substantial dispute as to the amounts owed to . . . Defendants and that the Court needs to determine and resolve these disputes through a declaratory order."[2] (*Id.* ¶ 27.) Plaintiffs then turn to their individual claims. As for their breach of contract claim, they aver that they "entered into mortgage loan agreements with . . . Defendants, both of which set forth dates by which monthly principal and interest payments were due as well as when late fees and other changes could be assessed." (*Id.* ¶ 30.) They assert that they duly performed all of the terms and conditions to the extent that they continued efforts to make payments to catch up with deadlines or cure missed payments. (*Id.* ¶ 31.) The mortgage loan agreements' terms and conditions also required Defendants to properly apply loan payments made by Plaintiffs. (*Id.* ¶ 32.) Plaintiffs assert that Defendants breached the mortgage loan agreements in the following ways: by miscalculating principal, interest, late fees, or other charges that Defendants assessed against Plaintiffs; by refusing or otherwise failing to accept and apply all of the payments that Plaintiffs made on the mortgage loans, thereby leading to the commencement of foreclosure

---

[2] Throughout the latter portion of their Complaint, Plaintiffs refer to both Defendants in the plural and do not distinguish between Bank of America and SunTrust. Accordingly, the Court finds that Plaintiffs are attempting to bring all claims against both Defendants. Therefore, the Court will refer to Defendants in the plural as it recites this portion of Plaintiffs' Complaint. However, the merits of this Order will reach only those claims asserted against Defendant Bank of America.

proceedings; by refusing or "failing to cure the problems with the mortgage loan modification problems on both mortgage loans;" or by issuing inappropriate or unwarranted charges against Plaintiffs.  (*Id.* ¶ 33.)

As for their breach of the implied duty of good faith and fair dealing claim, Plaintiffs submit that Defendants did not deal fairly with Plaintiffs in connection with the mortgage loan agreements when they refused or otherwise failed to properly accept and apply payments to the parties' mortgage loan agreements and then began foreclosure proceedings.  (*Id.* ¶ 38.) Defendants refused to resolve their mistakes with Plaintiffs in an equitable fashion.  (*Id.*) Plaintiffs point out that Defendants "enjoyed substantial discretionary power affecting" Plaintiffs' rights and "were required to exercise such substantial discretionary power in good faith."  (*Id.* ¶ 39.)  According to Plaintiffs, Defendants drove Plaintiffs into foreclosure so that they could acquire the real property at "a bargain basement price to get these mortgage loans and the real properties encumbered thereby off their books."  (*Id.* ¶ 40.)  Plaintiffs assert that Defendants had no intention of performing the mortgage loan agreements in good faith, and they constituted a bad faith breach of contract.  (*Id.* ¶ 41.)

As for their claims of fraud and misrepresentation, Plaintiffs aver that Defendants committed fraud when they "falsely represented to . . . Plaintiffs that they would properly credit payments made by . . . Plaintiffs on the mortgage loans" when they actually refused or failed to accept and apply all of Plaintiffs' mortgage loan payments.  (*Id.* ¶ 44.)  Defendants also misrepresented that they would properly calculate or correct errors regarding principal, interest, late fees, or other charges because they failed to make the necessary corrections ad "remain steadfast in their position with said corrections."  (*Id.* ¶ 45.)  Defendants also represented that

they would cure the problems with the mortgage loan modification programs, but they have refused to or have failed to make the requiste corrections or grant approval of the mortgage loan modification programs.  (*Id.* ¶ 46.)

Plaintiffs assert that Defendants committed fraud in the following additional ways: by falsely representing that their goods or services "had the sponsorship, approval, characteristics, ingredients, uses, benefits, and qualities that they do not actually have," by falsely representing that "there goods . . . or services were of a particular standard, quality, or grade which they do not possess," and by misrepresenting that "both business transactions conferred or involved rights and remedies which [they] did not have or involve or which are prohibited by law." (*Id.* ¶ 47-49.)  They also pled that Defendants acted at least recklessly and that they are entitled to punitive damages, and they assert that Defendants acted recklessly with the intent to deceive Plaintiffs.  (*Id.* ¶ 50.)  Plaintiffs also plead an alternate theory: they assert that Defendants were negligent in that they failed to exercise due care to maintain proper and accurate mortgage loan records and should have reasonably foreseen that their actions would financially harm Plaintiffs. (*Id.* ¶ 51.)

As for their TCPA claim, Plaintiffs assert that Defendants violated the TCPA by committing the same acts as those underlying their fraud and misrepresentation claims.  (*Id.* ¶ 55A-55E.)  However, they also present theories which track the statutory language of the TCPA: they submit that Defendants violated the TCPA by assessing improper or excessive late fees; by seeking to collect various improper fees, costs, or charges that were either not legally due under the mortgage loan agreements or that were in excess of amounts due and owing; by improperly characterizing the mortgage loan agreements as being in default or delinquent status to generate

unwarranted fees even though Plaintiffs made payments and were caught up with their payment deadlines or had cured their missed payments; by instituting improper or premature foreclosure proceedings to generate unwarranted fees; by misapplying or otherwise failing to apply or properly credit Plaintiffs' payments, resulting in late charges, delinquencies, or default; by mishandling or misappropriating Plaintiffs' mortgage payments; by treating Plaintiffs as though they were in default despite the tender of timely and sufficient payments or cured delinquencies; by refusing or failing to disclose the fees, costs, or charges allowable under the mortgage contract agreements; by ignoring grace periods; by refusing or failing to provide Plaintiffs with adequate and accurate monthly statement information; by becoming unjustly enriched with Plaintiffs' money; or "by other actions and/or omissions previously described . . . which are deceptive to the consumer or to any other person."  (*Id.* ¶ 55F-55Q.)  Plaintiffs assert that they are entitled to treble damages due to Defendants' TCPA violations, and they assert that Defendants' conduct has been "patently unfair."  (*Id.* ¶ 56-57.)

Plaintiffs' final claim is a general claim for "intentional, reckless, and/or negligent actions and/or omissions."  (*Id.* at 17.)  Plaintiffs assert that Defendants "had a duty to exercise reasonable care and skill to maintain proper and accurate mortgage loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting, and servicing of loan records including, but not limited to, acceptance of and accurate crediting of Plaintiffs' monthly mortgage payments."  (*Id.* ¶ 59.)  Plaintiffs then aver that Defendants breached their duty by "failing to accept and properly and accurately credit . . . Plaintiffs' monthly mortgage payments and by commencing foreclosure proceedings" without legal authority or documentation to do so.

(*Id.* ¶ 60.)  Plaintiffs reiterate Defendants' alleged actions which underlie their other claims and argue that Defendants acted intentionally, recklessly, or negligently.  (*Id.* ¶ 61.)

Plaintiffs request a myriad of forms of relief.  They ask for "a declaration of the rights and duties of the parties, especially and specifically that the Court determine the proper amounts that may be owed to . . . Defendants by . . . Plaintiffs."  (*Id.* at 18.)  They request treble damages for Defendants' TCPA violations, compensatory damages of at least $50,000, and punitive damages.  (*Id.* at 19.)  They also request the Court to permanently enjoin Defendants from violating the TCPA in the future.  (*Id.*)

## STANDARD OF REVIEW

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pled factual allegations of the complaint as true, construe those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the plaintiff.[3]  However, legal conclusions "masquerading as factual allegations" or unwarranted factual inferences including "conclusory allegations" need not be accepted as true.[4]  To avoid dismissal under Rule 12(b)(6), "the complaint must contain either direct or inferential allegations" with respect to all material elements of the claim.[5]

---

[3]     *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2007).

[4]     *Id.*

[5]     *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"[6]  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[7]  To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[8]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

## ANALYSIS

At the outset, the Court notes that Plaintiffs' Response contains merely two pages of text and asserts two reasons why Defendant's Motion should be denied.  First, Plaintiffs argue that they should be allowed to complete discovery to further develop their claims, and they cite to *Conley v. Gibson*, 355 U.S. 41 (1957), and pre-2007 Sixth Circuit case law stating as such.[10]  However, under *Twombly* and *Iqbal*, which retired *Conley*'s no-set-of-facts standard, the need for additional discovery is no longer a valid reason to deny a motion to dismiss; courts are not to throw open the doors of discovery based on threadbare boilerplate allegations.  Therefore, the

---

[6]     Fed. R. Civ. P. 8(a)(2).

[7]     *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1953 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

[8]     *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 570.

[9]     *Iqbal,* 129 S. Ct. at 1949.

[10]    (Pls.' Resp., D.E. # 14, at 1-2.)

Court is unpersuaded by this first argument. Second, Plaintiffs imply that because they filed a verified Complaint under oath, the Court should deny Defendant's Motion. The Court will address this issue before turning to the arguments raised by Defendant.

## Verified Complaint

Scant law exists regarding a verified complaint's ability to withstand a motion to dismiss solely because it is verified. For example, "speculative and conclusory allegations, even those contained in a verified complaint, are insufficient to withstand a motion for summary judgment."[11] Moreover, "simple verification is not enough to save what are nothing more than conclusive allegations."[12] Plaintiffs' arguments regarding the status of their Complaint as verified are brief: two sentences in their Response indicate that they "pled sufficient facts, UNDER OATH via verified Complaint, which set out a prima facie case against this Defendant."[13] The Court reads these statements to imply that because the complaint is verified, it can withstand a motion to dismiss.

In its Reply, Defendant notes that Plaintiffs cite no authority for the proposition that verification of a complaint supplies a basis for denying a motion to dismiss under Rule 12(b)(6), and it submits that it was not able to find any authority either way.[14] Because Defendant's Motion challenges the sufficiency of Plaintiffs' allegations rather than the Complaint's

---

[11] *Hamilton v. Roberts*, 165 F.3d 27, at *5 (6th Cir. 1998). *Edmonds v. Timmerman-Cooper*, No. 2:07-cv-1227, 2009 WL 1047111, at *8 (S.D. Ohio Apr. 17, 2009). The court noted that statements in a verified complaint have the same effect as statements made in an affidavit for summary judgment purposes. *Edmonds*, 2009 WL 1047111, at *8.

[12] *Hamilton*, 165 F.3d at *5.

[13] (*Id.*)

[14] (Defs.' Reply, D.E. # 15, at 2.)

authenticity, Defendant argues that Plaintiffs have not alleged facts supporting their causes of action based on this theory.[15]

While the bulk of case law examined by the Court reiterates the same two principles delineated above—that verified complaints may function as affidavits at summary judgment, but they cannot be overly conclusory, speculative, or contain hearsay if they are to do so—the Motion before the Court is a Motion to Dismiss rather than for Summary Judgment. However, the Court sees no reason why a verified complaint should be treated any differently than a non-verified complaint at the motion to dismiss stage. When evaluating a motion to dismiss, the Court must already take all of the statements in the complaint as true when it tests the sufficiency of the pleadings. Thus, the verification of a complaint's allegations as true would have no additional effect. Therefore, the Court finds that the Complaint's verified status does not give it any additional ability to withstand Defendant's Motion to Dismiss. Accordingly, the Court will proceed to evaluate the sufficiency of Plaintiffs' allegations regarding Defendant.

### Breach of Contract

The essential elements of a breach of contract claim include: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract."[16] Here, there is no doubt that an enforceable contract exists between the parties: Plaintiffs and Defendant signed and entered into the LMA, Note, and Deed of Trust. Therefore, the first element of Plaintiffs' breach of contract claim is satisfied.

---

[15]     (*Id.*)

[16]     *ARC Lifemed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

Section 1 of the Deed of Trust provides that "[Plaintiffs] shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. [Plaintiffs] shall also pay funds for Escrow Items pursuant to Section 3."[17]

Section 3 requires Plaintiffs to pay Defendant

> on the day Periodic Payments are due under the Note . . . a sum ("the Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any. . . . [Plaintiffs] shall pay [Defendant] the Funds for Escrow Items unless [Defendant] waives [Plaintiffs'] obligation to pay the Funds for any or all Escrow Items.[18]

Furthermore, the Deed of Trust contains a provision governing how payments are to be applied. Section 2 provides that payments shall be applied first to interest due under the Note, then to principal due under the Note, and finally to amounts due under Section 3.[19]  Section 12 of the Deed of Trust provides that Defendant's "acceptance of payments . . . in amounts less than the amount then due . . . shall not be a waiver of or preclude the exercise of any right or remedy."[20]

The LMA indicates that it amends and supplements the Deed of Trust.[21]  In Paragraph 2, the LMA states that Plaintiffs "promise to make monthly payments of principal and interest of U.S. $ 606.81."[22]  Nothing in the LMA satisfied or released "in whole or in part . . . the Note and

---

[17]     (Deed of Trust, D.E. # 9-2, at 4.)

[18]     (*Id.* at 5.)

[19]     (*Id.*)

[20]     (*Id.* at 9.)

[21]     (LMA, D.E. # 9-3, at 1.)

[22]     (*Id.*)

Security Instrument."[23]  Additionally, the LMA's amendments to the Note and Security

Instrument were agreed to "notwithstanding anything to the contrary contained in the Note or

Security Instrument."[24]  Thus, the LMA does not appear to alter the requirement that Plaintiffs

also continue to pay the Funds for Escrow Items.

> Tennessee's statute of frauds provides as follows:
>
> No action shall be brought against a lender or creditor upon any promise or commitment . . . to alter, amend, renew, extend or otherwise modify or supplement any written promise, agreement or commitment to lend money or extend credit, unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the lender or creditor, or some other person lawfully authorized by such lender or creditor.[25]

Here, the LMA, Note, and Deed of Trust all fall within the statute of frauds because they are

"written promise[s], agreement[s], or commitment[s] to lend money or extend credit."[26]

Additionally, the statute of frauds applies "only in suits for the breach or enforcement of a

contract and [is] thus inapplicable to [fraud or misrepresentation] claims" arising from that

breach of contract.[27]  The statute of frauds prohibits oral modifications of written agreements.[28]

---

[23]     (*Id.*)

[24]     (*Id.*)

[25]     Tenn. Code Ann. § 29-2-101(b)(1).

[26]     *Id.*; *Launius v. Wells Fargo Bank, N.A.*, No. 3:09-cv-501, 2010 WL 3429666, at *3 n.1 (E.D. Tenn. Aug. 27, 2010).

[27]     *In re Estate of Nelson*, No. W2006-00030-COA-R3-CV, 2007 WL 851265, at *16 (Tenn. Ct. App. Mar. 22, 2007).  The statute of frauds is not applicable to fraud or misrepresentation claims. *Jarrett v. Epperly*, 896 F.3d 1013, 1019 (6th Cir. 1990) (citing *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228 (Tenn. Ct. App. 1976)).

[28]     *Upperline Equip. Co. v. J & M, Inc.*, 724 F. Supp. 2d 883, 889-90 (E.D. Tenn. 2009).  An exception to the writing requirement for a modification to a contract within the

In its Motion, Defendant argues that Plaintiffs have not alleged any facts showing that it miscalculated any amount or made any inappropriate charges.[29]  Although Defendant acknowledges that Plaintiff Agatha Asemota was given conflicting information regarding a post-modification increase in Plaintiffs' monthly payment, Defendant asserts that this oral representation is irrelevant to Plaintiffs' breach of contract claim and that all of Plaintiffs' claims are controlled by the terms of the LMA, Note, and Deed of Trust.[30]  Defendant cites to Tennessee's statute of frauds and submits that the LMA could only be modified by a written agreement, not the oral representation provided to Plaintiffs.[31]

Additionally, Defendant contends that Plaintiffs have not alleged any facts supporting the conclusion that it failed to credit accepted payments which it had a duty to credit.[32]  Defendant states that the LMA "specifically and expressly addressed" that Defendant had no duty to accept payments insufficient to cover the amount owed.[33]  Finally, Defendant notes that it cannot ascertain the meaning of Plaintiffs' allegation that Defendant "failed to cure the problems with

_____

statute of frauds exists:  a written agreement can be modified orally if the parties have partially performed under the written agreement.  *Id.* (citing *Blasingame v. Am. Mats., Inc.*, 654 S.W.2d 659, 663 (Tenn. 1983)).  However, Plaintiffs did not plead facts sufficient to support this defense in their Complaint, and they did not raise it in their Response.  Therefore, the Court will not reach the issue.

[29]     (Def.'s Mot., D.E. # 9-1, at 5.)

[30]     (*Id.*)

[31]     (*Id.* at 5-6.)

[32]     (*Id.* at 6.)

[33]     (*Id.*)

the mortgage loan modification programs."[34]  Defendant agrees that Plaintiffs' loan was modified by the LMA, but Plaintiffs' breach of contract claim can arise only from the LMA, and Plaintiffs have not alleged facts showing that Defendant breached the LMA.[35]

The Court finds that the statute of frauds applies to the Note, Deed of Trust, and LMA. Moreover, the statute of frauds prevented these documents from being modified by the statement of Defendant that Plaintiffs needed to pay only $607.00 per month.  This communication with one of Defendant's representatives did not modify the Note, Deed of Trust, or LMA: for it to do so, it would have had to have been in writing.  Accordingly, Plaintiffs were required to perform under the Note, Deed of Trust, and LMA as they did before they were told to pay only $607.00 per month.

Plaintiffs allege four ways in which Defendant allegedly breached the LMA, Note, and Deed of trust: by miscalculating amounts assessed against Plaintiffs, by refusing or failing to accept and apply all of the payments they made on the loans, by refusing or failing to cure "the problems with the loan modification programs," and by issuing inappropriate or unwarranted charges.  Each of these claims is without merit.  First, Plaintiffs' Complaint contains no factual allegations that Defendant miscalculated any amounts owed to it; indeed, the facts it presents relate to SunTrust's conduct, but they do not mention Defendant.  Accordingly, Plaintiffs have failed to present any factual support which would raise relief against this Defendant to a plausible level.

---

[34]     (*Id.* at 7.)

[35]     (*Id.*)

Second, Plaintiffs' Complaint does contain facts stating that Defendant did not properly accept Plaintiffs' payments. However, it does not contain a factual basis supporting Defendant's alleged failure to properly apply the payments, and that portion of their claim necessarily fails. The Court finds that Plaintiffs' claim that Defendant improperly refused some of their payments is in direct conflict with the language of the LMA, Note, and Deed of Trust. The LMA did not alter the Deed of Trust's required payments of Funds for Escrow Items in addition to their payments on principal and interest, and the Deed of Trust permits Defendant to reject payments if they are not for the full amount due. Therefore, this portion of Plaintiffs' breach of contract claim fails.

Plaintiffs' final two asserted breaches of contract also fail. They do not allege that they engaged in a loan modification program with Defendant, but they actually entered into an LMA with Defendant. Neither party has indicated that the LMA is a mortgage modification program. Regardless, Plaintiffs do not detail which problems with the LMA Defendant allegedly failed or refused to cure. Therefore, this claim fails. Finally, Plaintiffs' mere allegation that Defendant issued inappropriate or unwarranted charges cannot state a successful breach of contract claim when Plaintiffs utterly fail to identify what those charges are and why they were unwarranted. This final breach of contract claim fails as well.

Accordingly, because all of the allegations Plaintiffs present either lack a factual basis, relate to SunTrust instead of Defendant, or are contrary to the LMA, Deed of Trust, or Note, Defendant's Motion to Dismiss this claim is **GRANTED**.

## **Breach of the Implied Covenant of Good Faith and Fair Dealing**

Under Tennessee law, "the standard of good faith and fair dealing . . . is fairly flexible and depends upon the facts of each case."[36] Tennessee common law imposes a duty of good faith in the performance and interpretation of contracts.[37] "[A] claim based on the implied covenant of good faith and fair dealing is not a stand alone claim; rather, it is part of an overall breach of contract claim."[38] In its Motion, Defendant argues that, because Plaintiffs have not stated a breach of contract claim, they cannot state a claim for breach of their duty of good faith and fair dealing ("GFFD").[39] It asserts that because a GFFD claim is not an independent basis for relief, it cannot survive without the underlying breach of contract claim.[40] Because the Court has dismissed Plaintiffs' breach of contract claim against Defendant, Plaintiffs' breach of GFFD claim must fail as well. Therefore, Defendant's Motion to dismiss this claim is **GRANTED**.

### Fraud

The elements of fraud under Tennessee law are as follows: "(1) an intentional misrepresentation of an existing material fact, (2) knowledge of the representation's falsity, and (3) injury caused by reasonable reliance on the misrepresentation."[41] Moreover, Federal Rule of Procedure 9(b) ("Rule 9(b)") requires "a party [to] state with particularity the circumstances

---

[36] *Madden Phillips Constr., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 823 (Tenn. Ct. App. 2009).

[37] *Elliot v. Elliot*, 149 S.W.3d 77, 84-85 (Tenn. Ct. App. 2004).

[38] *Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009) (citing *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000)).

[39] (Def.'s Mot., D.E. # 9-1, at 7.)

[40] (*Id.* at 7-8.)

[41] *Lopez v. Taylor*, 195 S.W.3d 627, 634 (Tenn. Ct. App. 2005).

constituting fraud."[42]  Intent and knowledge can be alleged generally under Rule 9(b).[43]  Rule

9(b) alerts "defendants 'as to the particulars of their alleged misconduct' so that they may

respond."[44]  This heightened pleading standard prevents fishing expeditions, protects defendants'

reputations from allegations of fraud, and narrows potentially wide-ranging discovery to relevant

matters.[45]  As the Sixth Circuit has noted, "[t]o plead fraud with particularity, the plaintiff must

allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent

scheme, (3), the defendant's fraudulent intent, and (4) the resulting injury."[46]

In its Motion, Defendant rests on Rule 9(b) and argues that Plaintiffs have not presented

sufficiently particularized allegations of fraud and do not even allege a valid framework of

fraud.[47]  Additionally, Defendant argues that Plaintiffs have not alleged a misrepresentation of a

past or present material fact.[48]  It points out that Plaintiffs allege statements related to future loan

servicing performance, but these statements amount to "nothing more than statements of

---

[42]     Fed. R. Civ. P. 9(b).

[43]     *Id.*

[44]     *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (quoting *U.S.* ex rel. *Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007)).

[45]     *U.S.* ex rel. *SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008); *Bledsoe*, 501 F.3d at 503 n.11.

[46]     *Chesbrough*, 655 F.3d at 467 (quotation and internal punctuation omitted).

[47]     (Def.'s Mot., D.E. # 9-1, at 8.)  Indeed, Defendant states that "nothing in the Complaint provides a scintilla of notice as to the time, place[,] or content of these representations or the identity of any individual making the alleged representations."  (*Id.* at 9.)

[48]     (*Id.* at 10.)  Defendant also points out that Plaintiffs did not allege the time, place, or identity of the person making the statement.  (*Id.* at 11 n.5.)

intention," which are not a valid basis for fraud or misrepresentation.[49]  Furthermore, Defendant argues that Plaintiffs could not have reasonably relied on the oral representations regarding their monthly payment amounts because those representations "contradict the clear and unambiguous terms" of the LMA."[50]

The Court finds the first of these arguments persuasive.  Although Plaintiffs indicated the content of the misrepresentation and their resulting injury, they did not set forth Defendant's alleged fraudulent scheme or the time of the allegedly fraudulent statement.[51]  Therefore, they have failed to satisfy the requirements of Rule 9(b).  However, whether Plaintiffs were required, at the time of the communication, to pay $800.00 or $607.00 may not be a misrepresentation of a future fact: the structure of Paragraph 10 of the Complaint is ambiguous.  Plaintiffs could have called about the increase in payments and been told that they did not currently owe $800.00 or that they would not owe $800.00 in the future.  Therefore, the Court will not dismiss Plaintiffs' fraud claim because they failed to set forth a misrepresentation related to a present or existing fact.  However, Plaintiffs' fraud claim still fails under Rule 9(b), and Defendant's Motion is **GRANTED** in this regard.

## Negligent Misrepresentation

Claims of negligent misrepresentation must be pled with the particularity required by the heightened pleading standard of Rule 9(b).[52]  Thus, at minimum, plaintiffs must "allege the time,

---

[49]      (*Id.* at 10.)

[50]      (*Id.*)

[51]      (Compl. ¶ 10.)

[52]      *Girgis v. Countrywide Home Loans, Inc.*, 733 F. Supp. 2d 835, 856 (N.D. Ohio 2010).  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with

place[,] and contents of the misrepresentations on which they relied."[53]  The elements of negligent misrepresentation require a plaintiff to establish that "the defendant supplied information to the plaintiff; that the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information; and the plaintiff justifiably relied on the information."[54]

In its Motion, Defendant argues that "Plaintiffs summarily attempt to combine all prior allegations [for fraud and intentional misrepresentation] into a claim for negligent misrepresentation as well."[55]  In addition to relying on its previous arguments that Plaintiffs do not present sufficient factual allegations to support their negligent misrepresentation claim and that most of the putative misrepresentations relate to past or existing facts, Defendant submits that "if the only source of duty between a particular plaintiff and defendant is their contract with each other, . . . a breach of that duty . . . will not support a negligence action."[56]  Defendant appears to combine its arguments regarding Plaintiffs' negligent misrepresentation claim with their traditional negligence claim and argues that "Plaintiffs cannot allege any claim for negligence because a loan servicer owes no duty to a borrower outside of the duties set forth in the loan agreements."[57]

---

particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

[53]        *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008).

[54]        *Cato v. Batts*, No. M2009-02204-COA-R3-CV, 2011 WL 579153, at *6 (Tenn. Ct. App. Feb. 17, 2011).

[55]        (Def.'s Mot., D.E. # 9-1, at 11.)

[56]        (*Id.* at 12.)

[57]        (*Id.*)

Defendant's conflation of Plaintiffs' negligent misrepresentation claim with their negligence claim is warranted by the wording of Paragraph 51 of the Complaint, which appears to bring a negligence claim on top of their fraud and misrepresentation claims. However, the Court will interpret this claim as a negligent misrepresentation claim. Regardless, Plaintiffs' negligent misrepresentation claim fails for the same reasons as their fraud claim. Plaintiffs have failed to satisfy the requirements of Rule 9(b). Therefore, any claim Plaintiffs have attempted to state for negligent misrepresentation fails, and Defendant's Motion is **GRANTED** in this regard.

### Intentional Misrepresentation

Intentional misrepresentation claims contain four elements:

(1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation['s] falsity—that the representation was made "knowingly" or "without belief in its truth," or recklessly without regard to its truth or falsity; (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) that the misrepresentation relates to an existing or past fact.[58]

Claims of intentional misrepresentation must be pled with the same heightened pleading standards under Rule 9(b) as negligent misrepresentation.[59] In its Motion, Defendant relies on the same arguments as it presented for Plaintiffs' fraud and negligent misrepresentation claims.[60] For the same reasons addressed above, Plaintiffs' intentional misrepresentation claim fails under Rule 9(b) and on the merits, and Defendant's Motion is **GRANTED** on this regard.

The Court notes that it has based its analysis both on the allegations in Paragraph 10 of the Complaint, which relate specifically to Defendant, and on the allegations in Paragraphs 43-

---

[58]     *Murvin v. Cofer*, 968 S.W.2d 304, 310 (Tenn. Ct. App. 1997).

[59]     *Girgis*, 733 F. Supp. 2d at 856.

[60]     (Def.'s Mot., D.E. # 9-1, at 8-12.)

51, which relate to both Defendant and SunTrust.  While Paragraph 10's allegations approach the

level of particularity required by Rule 9(b), Paragraphs 43-51 are far too general to give

Defendant sufficient notice of its allegedly fraudulent or misleading conduct.  They do not

contain specifics and appear to be mere boilerplate accusations related to activities banks

generally undertake.  As such, the Court dismisses all claims of fraud, negligent

misrepresentation, and intentional misrepresentation arising out of Paragraph 10 and 43-51 of the

Complaint.

## **TCPA**

The TCPA provides that "[u]nfair or deceptive acts or practices affecting the conduct of

any trade or commerce constitute unlawful acts or practices."[61]  The TCPA contains a list of

different "unfair or deceptive acts or practices" which violate the TCPA.[62]  Plaintiffs do not

identify under which TCPA subsection they bring their TCPA claim: accordingly, the Court will

assume that they have brought suit under the broadest section, section 47-18-104(b)(27).  Section

47-18-104(b)(27) prohibits "[e]ngaging in any other act or practice which is deceptive to the

consumer or to any other person."[63]  To recover under the TCPA, a plaintiff "must prove: (1) that

---

[61]     Tenn. Code Ann. § 47-18-104(a).

[62]     *Id.* § 47-18-104(b).

[63]     *Id.* § 47-18-104(b)(27).  The Court notes that this section was amended in
October of 2011 to read "[e]ngaging in any other act or practice which is deceptive to the
consumer or to any other person; provided, however, that enforcement of this subdivision (b)(27)
is vested exclusively in the office of the Attorney General and Reporter and the director of the
division."  2011 Pub. Acts, Ch. 510, § 15.  However, this amendment took effect on October 1,
2011, and the Public Act did not indicate that it should be applied retroactively.  *Id.* § 24 ("This
act shall take effect October 1, 2011, the public welfare requiring it and shall apply to all liability
actions for injuries, deaths[,] and losses covered by this act which accrue on or after such date.").
Therefore, the Court finds the controlling version of the TCPA to be the version in effect when
Plaintiff filed suit in September of 2011.

the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated . . . .'"[64]

Thus, although the TCPA does not require reliance, plaintiffs are required to show that the defendant's wrongful conduct proximately caused their injury.[65] The defendant's conduct need not be willful or knowing, but if it is, the TCPA permits the trial court to award treble damages.[66] Notably, TCPA claims pled in federal court are subject to Rule 9(b)'s heightened pleading requirements.[67]

In its Motion, Defendant argues that Tennessee Rule of Civil Procedure 9.02's heightened pleading requirements apply to TCPA claims filed in federal court and that Plaintiffs' TCPA claim cannot meet those standards.[68] Additionally, Defendant avers that the TCPA does not apply to Plaintiffs' case: because the unfair or deceptive act complained of must affect trade or commerce, and trade or commerce does not include disputes over repossession of the collateral securing a loan, the TCPA does not apply.[69] Defendant then asserts that this case results from a

---

[64]     *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. § 47-18-109(a)(1)).

[65]     *White v. Early*, 211 S.W.3d 723, 741 (Tenn. Ct. App. 2006).

[66]     Tenn. Code Ann. § 47-18-109(a)(3).

[67]     *See Peoples v. Bank of Am.*, No. 11-2863-STA, 2012 WL 601777, at *9 (W.D. Tenn. Feb. 22, 2012); *McKee Foods Corp. v. Pitney Bowes, Inc.*, No. 1:06-cv-80, 2007 WL 896153, at *5 (E.D. Tenn. Mar. 22, 2007).

[68]     (Def.'s Mot., D.E. # 9-1, at 12.)

[69]     (*Id.* at 13.)

dispute over a foreclosure of the collateral securing the LMA, and because its actions were in the context of a dispute over collateral, Plaintiffs' TCPA claim fails as a matter of law.[70]

Although the Court disagrees with Defendant's assertion that the TCPA must meet Tennessee's heightened pleading standard, as state procedural rules do not apply in federal court, the Court must apply federal Rule 9(b)'s requirements to Plaintiffs' TCPA claim. Their TCPA claim cannot withstand Rule 9(b)'s required scrutiny. As discussed above, at minimum, Plaintiffs are required to allege the time, place, and content of the allegedly deceptive or unfair actions. Although Plaintiffs' laundry list of alleged deceptive activities could satisfy the content requirement, Plaintiffs did not set forth either the time or the place of these alleged actions. Accordingly, Plaintiffs' TCPA claim fails to satisfy Rule 9(b), and Defendant's Motion is **GRANTED**. The Court need not address Defendant's other arguments.

<u>**Other Intentional, Reckless, or Negligent Actions or Omissions**</u>

Tennessee law appears to accept negligent performance of a contract as a tort action upon which a plaintiff can recover.[71] Although the Tennessee Supreme Court noted that "[a] contract may be negligently or fraudulently breached and the cause of action remain in contract rather than in tort[,]" the court distinguished between contracts brought under the UCC and service contracts, such as those based upon "negligent performance of a contract to construct a building."[72] Here, Defendant has not argued that the LMA, Note, and Deed of Trust are governed by the UCC. Thus, the Court concludes that Plaintiffs could feasibly bring a

---

[70]     (*Id.*)

[71]     *See Mid-South Milling Co., Inc. v. Loret Farms, Inc.*, 521 S.W.2d 586 (Tenn. 1975); *Perryman v. Peterbilt of Knoxville, Inc.*, 708 S.W.2d 403, 406 (Tenn. Ct. App. 1985).

[72]     *Mid-South Milling Co.*, 521 S.W.2d at 588-89.

negligence claim for Defendant's alleged negligent performance of contract. However, for them to successfully state such a claim, they would at least need to be able to make out the elements of negligence: duty, breach, causation, and damages.

In its Motion, Defendant argues that Plaintiffs cannot state a claim for negligence because they have not alleged any facts showing that its servicing of their loan was improper.[73] Defendant again relies on the statute of frauds to assert that "it cannot be sued in negligence for failing to service the loan in accordance with th[e] purported oral representation."[74] Additionally, Defendant avers that Plaintiffs have not established that they could permissibly pay only $607 per month under the documents presented.[75] Finally, it argues that the parties' obligations are contained in the agreements they signed, and Defendant does not owe a duty of care to Plaintiffs independent of those obligations.[76]

For the same reasons that Plaintiffs' breach of contract claim fails, their last-ditch attempt at stating a tort claim for the same conduct fails as well. As before, even taking the statement by Defendant's representative regarding the amount of Plaintiffs' monthly payments as true, the LMA, Note, and Deed of Trust could not be modified by an oral statement. Because the statement did not change their obligations under those documents, Plaintiffs were still required to make payments on their principal and interest in addition to payments of escrow funds. The general allegations as alleged in the Complaint do not indicate that Defendant breached the terms

---

[73]    (Def.'s Mot., D.E. # 9-1, at 14.)

[74]    (*Id.*)

[75]    (*Id.*)

[76]    (*Id.* at 15.)

of the LMA, Note, and Deed of Trust. As such, this portion of Plaintiffs' negligence claim fails, and Defendant's Motion is **GRANTED**. Moreover, Plaintiffs cannot state a claim for intentional actions or omissions without specifying under which intentional tort theory they are proceeding. Therefore, to the extent that they attempt to state a separate claim for intentional actions, Defendant's Motion to dismiss such a claim is **GRANTED**.

**Punitive Damages**

In its Motion, Defendant argues that because none of Plaintiffs' substantive claims remain viable, their derivative claim for punitive damages must fail as well.[77] The Court agrees: because the Court has dismissed all of Plaintiffs' claims against Defendant, they will be unable to receive any damages from Defendant at all, let alone punitive damages. Accordingly, Defendant's Motion to dismiss ths portion of Plaintiffs' claim is **GRANTED**.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 18, 2012.

---

[77]      (Def.'s Mot., D.E. # 9-1, at 15.)